**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Sonjia R. Lindsey, | : | Case No.  3:05 CV 07401 |
| Plaintiff, | : | |
| vs. | : | **MAGISTRATE'S REPORT** |
| | | **AND RECOMMENDATION** |
| Whirlpool Corporation, | : | |
| Defendant. | : | |

This employment discrimination case, filed pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e(a) (1)) and the Ohio Civil Rights Act (OHIO REV. CODE § 4112), has been referred to the undersigned Magistrate for report and recommendation.  Pending is Defendant's Motion for Summary Judgment (Docket No. 28), Plaintiff's Opposition (Docket No. 41) and Defendant's Reply (Docket No. 47).  For the reasons that follow, the Magistrate recommends that the Motion for Summary Judgment be granted.

**THE PARTIES**

Plaintiff is an African American citizen of the United States whose permanent residence is in Fostoria, Ohio (Docket No. 1, ¶ 9).  Defendant Whirlpool Corporation is located in Findlay, Ohio (Docket No. 1, p. 2).  The Findlay, Ohio, facility manufactures dishwashers and ranges (Docket No. 43, p. 32).          Although they are not named in their individual capacities as parties to this litigation,

Plaintiff contends that the following employees were instrumental in causing her to file a charge with the Equal Employment Opportunity Commission (EEOC). Dana Abbott was employed in the capacity of a line leader; Doug Miller was the immediate supervisor for Plaintiff and Dana Abbott; Cheryl Boes was a supervisor; Kevin Spradlin was an engineer; Jenni Hanna was the line manager; Ryan Leonard was a manager; Sandy Dye was a manager for worker's compensation; Sandy Franks was assigned to division staff; Mark Rivers was division staff manager; Angela Woodley was health center medical assistant; Susie Lawson was line coordinator, and Kevin Traxler was a human resource representative (Docket No. 43, pp. 48, 59).

## FACTUAL BACKGROUND

Plaintiff was an employee of Defendant Whirlpool for nineteen years (Docket No. 1, ¶ 4). Initially, Plaintiff worked on the general labor line. She was reassigned to the plastics line, and later she bid on the dishwasher line (Docket No. 43, pp. 31, 32, 35). In 1993, Plaintiff was "bumped" to the range line (Docket No. 43, p. 36). When Defendant stopped manufacturing ranges, Plaintiff was returned to the dishwasher line (Docket No. 43,p. 37). In 2003, Plaintiff became a backup line stocker which entailed providing supplies to those on the line (Docket No. 43, pp. 39, 40).

Defendant converted to "lean manufacturing" in 2003. Plaintiff was provided the original training for implementation of the lean manufacturing system but denied additional training. Co-workers "Rocky and Mary," her backup workers, were given the additional training (Docket No. 43, p. 49, 50). She reported this fact to Cheryl Boes and Kevin Spradlin, neither of whom obtained the training for her (Docket No. 1, ¶ 6, Docket No. 43, p. 49). Doug Miller told Plaintiff that she did not need to attend the training. Attendees were entitled to overtime pay for the training conducted on Saturday (Docket No. 43, pp. 51, 54). However, the lack of training did not prevent Plaintiff from performing her job (Docket

2

No. 43, p. 52).

During 2003, Plaintiff recalled that Dana Abbott attempted to intimidate her by questioning her whereabouts and getting "in her face" (Docket No. 43, p. 112). Plaintiff and Dana Abbott argued about his persistent attempts to intimidate her, talk to her, follow her, give her dirty looks or generally throw his weight around (Docket No. 43, pp. 113, 114, 115). In September 2003, Plaintiff was prescribed drug therapy for the treatment of depression and anxiety disorders (Docket No. 43, p. 123).

Throughout their association, Plaintiff contends that Dana Abbott made off-the-wall and unnecessary comments including asking why Plaintiff had a black rather than a white purse (Docket No. 43, p. 93). Plaintiff construed this comment as a reference to her race (Docket No. 43, p. 96). Plaintiff reported Dana Abbott's activities to Doug Miller; however, the harassment did not cease (Docket No. 1, ¶ 5). Plaintiff discussed these events with Ryan Leonard who discussed the events with Jenni Hanna. Jenni Hanna reprimanded Plaintiff for talking to Ryan Leonard "behind her back" and warned her never to complain to Ryan Leonard again (Docket No. 1, ¶ 13; Docket No. 43, p. 115-116, 117, 118). Sandy Dennis investigated Dana Abbott's behavior and reported to Plaintiff that "everything was okay" (Docket No. 43, p. 121).

In March or April 2004, Dana Abbott commented about how dark it became when Plaintiff entered the room. As Plaintiff pulled her chair up to the table, he said "Oh, it just got awfully dark in here. Oh, hi, Sonjia." Dana Abbott failed to respond when Plaintiff asked if such statement was racial. Later, he claimed that he was not a racist; consequently, he could not have made a racial comment (Docket No. 43, p. 75, 78). When confronted with whether the comment was racial, Dana Abbott swung at Plaintiff attempting to hit her in the face (Docket No. 43, p. 77). Dana Abbott then took a piece of woven cloth about one to two inches wide and began making gestures imitating slave beatings (Docket

3

No. 43, p. 77, 82). Plaintiff grabbed the cloth from him and informed Dana Abbott that she was going to tell Jenni (Docket No. 43, pp. 76, 78).

Plaintiff reported this incident involving the comment about darkness to Jenni Hanna (Docket No. 1, ¶s 7, 8, 9). Jenni Hanna admonished Plaintiff that the merits of her complaint were not subject to further discussion and then scolded her for causing the assembly line employees to conclude from her actions that Dana Abbott was a racist (Docket No. 1, ¶ 11; Docket No. 43, pp. 59, 104). Dana Abbott was not admonished for his acts and the harassing behavior continued (Docket No. 1, ¶ 12). Jenni Hanna did conduct an investigation by speaking to other employees. Plaintiff resolved the matter by avoiding Dana Abbott (Docket No. 43, p. 107). However, Dana Abbott continued to follow Plaintiff and give her "dirty" looks (Docket No. 43, p. 108). Plaintiff complained to Sandy Franks that she was in a hostile work environment (Docket No. 1, ¶ 14).

During the administration of a "Grade 4 test," a proctor employed by Defendant on a contractual basis, made reference to Negroes and instructed Plaintiff to identify herself as a Negro (Docket No. 43, p. 99). Sandy Franks investigated this issue and apologized on behalf of Whirlpool. Sue Dye apologized also (Docket No. 43, p. 100). Four to five years later Plaintiff took the "Grade 4 test" again and the identical proctor repeated the identical reference to Plaintiff's race  (Docket No. 43, p. 101). Defendant agreed not to use him as a proctor for examinations administered in the future (Docket No. 42, p. 102).

Tana Taylor often used the term "pot calling the kettle black."  She did not consider the use of such terms derogatory (Docket No. 42, p. 23).  Tana Taylor recalled that Mark Lonsberry made comments about everyone from Fostoria, Ohio being black and unemployed (Docket No. 42, pp. 17, 21). Plaintiff "gave it right back to him" by making racial comments as well (Docket No. 42, p. 22).  Tana further testified that taking a vacation day was not required if an employee wanted to shadow another

4

employee (Docket No. 42, p. 19).

During 2004 and 2005, Plaintiff took the requisite courses to obtain certification as a phlebotomist/medical assistant (Docket No. 43, p. 62, Defendant's Exhibit F).  To fulfill a course requirement, Plaintiff was required to observe/shadow a Whirlpool employee.  She made arrangements with Cindy Osting, human resource's personnel, to obtain a replacement on the line while she observed/shadowed management (Docket No. 43, p. 64).  On or about April 7, 2004, Doug Miller vetoed this arrangement by requiring that Plaintiff observe/shadow "on her own time."  Later, Cindy Osting apologized to Plaintiff for Doug's failure to adhere to procedure (Docket No. 43, p. 65; Defendant's Exhibit C).  Plaintiff subsequently learned that Larry Wickiser and Paul Siefker, both Caucasian employees, were not required to take vacation time to observe/shadow officer personnel (Docket No. 43, pp. 70, 73).

Plaintiff's physician authorized medical leave from April 2004 through October 2004, because of mental stressors and the hostile work environment (Docket No. 43, pp. 123, 168; Docket No. 1, ¶ 16). When Plaintiff returned to work, Defendant's physician authorized an additional sixty days of medical leave (Docket No. 43, p. 123).  Upon her arrival at work on December 8th, Defendant's physician would not release her to return to work even though her treating physician had released her for work (Docket No. 1, ¶s 19, 20).  A notice advising Plaintiff that she had three days to return to work was forwarded in January 2005 (Docket No. 1, ¶ 23; Docket No. 43, p. 160).  Plaintiff returned to work on or about January 17, 2005 (Docket No. 1, ¶ 24).  When she returned to work, Plaintiff was assigned to the same area in which she had been employed before she took medical leave (Docket No. 1, ¶ 25).  Doug Miller and Dana Abbott gave Plaintiff dirty looks and Susie Lawson, an African American, referred to Plaintiff as "Ms. Thang," a derogatory term meaning "bitch," before giving her a job assignment (Docket No. 1, ¶

5

25; Docket No. 43, pp. 137, 148).  Within forty-five minutes of returning to work, Plaintiff had become visibly and emotionally upset and left the workplace (Docket No. 1, ¶ 25; Docket No. 43, p. 134-141). Plaintiff complained about Susie Lawson's comments to Kevin Traxler (Docket No. 43, p. 140).  On March 5, 2005, Plaintiff returned to Whirlpool to tender her resignation (Docket No. 1, ¶ 28; Docket No. 43, p. 143).

Initially, Plaintiff was denied medical pay for leave taken from April 2004 through December 2004 (Docket No. 1, ¶ 17).  Ultimately, she reached a settlement with Unicare Health Insurance, the benefit's administrator, for partial medical pay (Docket No. 43, pp. 5, 151, 153).  At the time of her resignation, Plaintiff was earning $15.96 per hour (Docket No. 43, p. 47).  Since May 2005, Plaintiff has been employed earning $14 per hour (Docket No. 43, p. 172).  Plaintiff claims that she is entitled to lost wages for the difference in hourly rate and personal leave pay (Docket No. 43, pp. 156).

While on medical leave, Plaintiff filed a charge with the EEOC on June 26, 2004 (Docket No. 1, Defendant's Exhibit C).  On July 19, 2005, the EEOC adopted the findings of the state or local Fair Employment Practices agency that investigated the charge and closed the file (Docket No. 1, Exhibit 1). Plaintiff filed a timely Complaint in this Court and an Opposition to Defendant's Motion for Summary Judgment.

## SUMMARY JUDGMENT STANDARD

The summary judgment procedure is designed to dispose of cases wherein there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56. Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, with the affidavits if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Copeland v. Machulis*, 57 F.3d

6

476, 478 (6th Cir. 1995) (*citing LaPointe v UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993)).

The moving party bears the initial burden of establishing an absence of evidence to support the non-moving party's case. *Celotex Corporation v. Catrett*, 106 S. Ct. 2548, 2552-2553 (1986). In the face of Defendant's properly supported Motion for Summary Judgment, the Plaintiff cannot rest on his or her allegations to get to the jury without significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Incorporated*, 106 S. Ct. 2505, 2510 (1986) (*citing First National Bank of Arizona v. Cities Services Company*, 88 S. Ct. 1575, 1593 (1968)). The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff. *Id.* at 2512.

To oppose a motion for summary judgment successfully, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1355 (1986). In determining if the facts are material, the court must look to the substantive law. The evidence of the non-movant is then taken as true and all justiciable inferences are drawn in his or her favor. *Anderson*, 106 S. Ct. at 2513 (*citing Addickes v. S.H. Kress & Co.*, 90 S. Ct. 1598, 1609-1610 (1970)). The Court must refrain from resolving conflicts in the evidence or making credibility determinations. *Id*. If, after deciding that the dispute about a material fact is genuine, summary judgment should be denied.

Once the moving party has met its burden, the non-moving party must go beyond the pleadings and come forward with specific facts to show that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex*, 106 S. Ct. at 2552-53. The non-moving party must do more than show that there is some metaphysical doubt as to the material facts. *Pierce v. Commonwealth Life Insurance*, 40 F.3d 796, 800 (6th Cir. 1994). The non-moving party must present significant probative evidence in support of its

7

opposition to the motion for summary judgment. *Moore v. Philip Morris Company*, 8 F.3d 335, 339-340 (6th Cir. 1993). If, after adequate time for discovery, the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his claim or her claim, summary judgment is appropriate. *Celotex*, 106 S. Ct. at 2552-53.

## DISCUSSION

Plaintiff's claims can be characterized as follows: (1) racially hostile work environment/harassment, (2) disparate treatment, (3) retaliation and (4) constructive discharge. Defendant contends that Plaintiff cannot make a prima facie case for a racially hostile work environment and harassment since the allegations were not severe or pervasive enough to rise to the level of a racially hostile work environment. Defendant further contends that Plaintiff cannot establish a prima facie case for racial discrimination or retaliation since she cannot show that she suffered an adverse employment action. Moreover, Defendant argues that Plaintiff cannot make a prima facie case for constructive discharge since her working conditions were tolerable.

Title VII declares it unlawful for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's race. 42 U.S.C. § 2000e-2(a)(1) (Thomson/West 2007). Ohio's civil rights statute also makes it unlawful for an employer to discriminate on the basis of race. *See* OHIO REV. CODE § 4112 (Thomson/West 2007). The district court shall consider Plaintiff's federal and state law discrimination claims under the Title VII framework because Ohio's requirements are the same as under federal law. *Carter v. University of Toledo,* 349 F.3d 269, 272 -273 (6th Cir. 2003) (*citing Ohio Civil Rights Comm'n v. Ingram*, 69 Ohio St.3d 89, 630 N.E.2d 669, 674 (1994)).

Racially Hostile Work Environment/Harassment[1]

Plaintiff claims that Dana Abbott was permitted to harass her, comment on her race without disciplinary action and follow her around the plant. These actions created a racially hostile work environment. Plaintiff contends that she was entitled to work free of such activities.

Title VII prohibits racial harassment that creates a hostile or abusive work environment. *Newman v. Federal Express*, 266 F.3d 401, 405 (6th Cir. 2001) (*citing Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999)). In order to establish a prima facie case of hostile work environment based on race under Title VII, a plaintiff must show: 1) that she is a member of a protected class; 2) that she was subjected to unwelcome racial harassment; 3) that the harassment was based on race; 4) that the harassment had the effect of unreasonably interfering with her work performance by creating an intimidating, hostile, or offensive work environment; and 5) the existence of employer liability. *Id.*

In determining whether there was a hostile or abusive workplace environment, the court must look to the totality of the circumstances. *Id.* (citations omitted). The court should consider the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* (*citing Harris v. Forklift System,* 114 S. Ct. 367, 371 (1993)). Discrimination in this form occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Vitt v. City of Cincinnati*, 250 F. Supp.2d 885, 889 (S.D.Ohio 2002) (*citing Harris,* 114

---

[1] In her charge filed with the EEOC on June 26, 2004 (Docket No. 43, Defendant's Exhibit C), Plaintiff addressed her contention that she considered the harassment based on her race to constitute a hostile work environment. This claim is within the scope of the EEOC investigation.

S. Ct. at 370; *quoting Meritor Savings Bank,* 106 S. Ct. 2399, 2404 (1986)).

In determining whether an environment is one that a reasonable person would find hostile or abusive and that the plaintiff in fact did perceive to be so, courts look at all of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Hafford,* 183 F.3d at 512 (*citing Harris*, 114 S. Ct. at 371; *Abeita v. TransAmerica Mailings*, 159 F.3d 246, 251 (6th Cir. 1998)).  A recurring point in the Supreme Court's opinions addressing the merits of discrimination based on race, is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'." *Id.* at 512-513 (*citing Faragher v. City of Boca Raton,*, 118 S. Ct. 2275, 2283-84 (1998) (citations omitted)).

When the facts are accepted as true and viewed in her favor, a rational fact finder would determine that Plaintiff is a member of a protected class, that she was subjected to unwelcome racial harassment and that the harassment was based on race.  Specifically, Dana Abbott made several inferences about her race and also made a gesture that imitated a slave beating and the contract proctor made racially insensitive remarks during two separate testing sessions.  Plaintiff's testimony clearly establishes that she was affected by the offhand comments made by Dana Abbott and the proctor; however, Plaintiff has failed to present probative evidence that her work performance failed as a result of these comments.  Plaintiff has failed to make a prima facie case for hostile work environment based on racial harassment.

Disparate Treatment

Plaintiff alleges that she was treated differently with respect to taking paid leave and obtaining

10

training.  Plaintiff contends that two Caucasian employees were granted paid leave to "shadow" business personnel whereas she was told to take a vacation day to accommodate any course work.  Additionally, Plaintiff was deprived of the opportunity to attend supplemental training and obtain overtime pay.  Co-workers Rocky and Mary were permitted to attend a training conducted on Saturday and obtain overtime pay for their attendance.  Defendant claims that Plaintiff has no probative evidence that she was required to take a vacation day to "shadow" business personnel.  Further, Plaintiff did not require supplemental training.

Individual disparate treatment claims brought pursuant to Title VII are often categorized as either single motive claims, i.e., when an illegitimate reason motivated an employment decision, or mixed motive claims, when "both legitimate and illegitimate reasons motivated the decision." *Wright v. Murray Guard, Incorporated*, 455 F.3d 702, 711 -712 (6th Cir. 2006) (*citing Desert Palace v. Costa,* 123 S. Ct. 2148, 2150 (2003)).  A plaintiff can raise a mixed motive Title VII claim by "demonstrat[ing] that race, color, religion, sex, or national origin was *a motivating factor* for any employment practice, even though other factors also motivated the practice." *Id.* at 713 (*citing* 42 U.S.C. § 2000e-2(m) (emphasis added)). The ultimate question at summary judgment on a mixed motive case is "whether the plaintiff has presented evidence, direct or circumstantial, from which a reasonable jury could logically infer that [a protected characteristic] was *a motivating factor* in [the defendant's adverse employment action against the plaintiff]." *Id.* (*citing Harris v. Giant Eagle, Inc.,* 133 Fed. Appx. 288, 297 (6th Cir. 2005) (unpublished opinion) (alteration in original) (internal quotation marks omitted); *accord* 42 U.S.C. § 2000e-2(m); *Stegall v. Citadel Broad. Co.,* 350 F.3d 1061, 1068 (9th Cir.2003)).

11

Similar to the plaintiff in *Wright*, the Plaintiff in this case cannot overcome Defendant's Motion for Summary Judgment on her mixed-motive claim because she has not offered sufficient evidence, direct or circumstantial, to create a genuine issue of material fact on whether her race was a motivating factor in the decision to deny her supplemental training or require her to take a vacation day to complete class work. Plaintiff's argument in support of her mixed-motive claims is replete with conclusory hearsay or rumors unsupported by any evidence. Such innuendo is insufficient to create a genuine issue of material fact as to whether Defendant considered race in denying paid leave to shadow/observe personnel or denying Plaintiff the opportunity to attend supplemental training.

Retaliation

Plaintiff alleged that Defendant denied her request for disability benefits since she complained about Dana Abbott's behavior (Docket No. 43, Defendant's Exhibit C). Defendant asserts that Unicare denied Plaintiff's short-term benefits, thus, there is no causal connection between Defendant and the denial of short term benefits.

Despite the findings of the EEOC, a plaintiff can survive a motion for summary judgment against a claim for unlawful retaliation under Title VII by producing direct evidence of retaliation or establishing a prima facie case. Title VII provides in pertinent part:

> "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

42 U.S.C. § 2000e-3(a) (Thomson/West 2007).

In order to find a *prima facie* case of retaliation under Title VII a plaintiff must prove by a preponderance of the evidence:  1) plaintiff engaged in activity protected by Title VII; 2) plaintiff's exercise of [such protected activity] was known by the defendant; 3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and 4) that there was a causal connection between the protected activity and the adverse employment action."  *DiCarlo v. Potter,* 358 F.3d 408, 420 (6th Cir. 2004) (*citing Equal Employment Opportunity Commission v. Avery Dennison Corporation,* 104 F.3d 858, 860 (6th Cir. 1997); *see also Williams v. Nashville Network,* 132 F.3d 1123, 1131 (6th Cir. 1997)).  "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met."  *Id.* (*citing Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000)).  "Once a *prima facie* case is established, the burden of producing some non-discriminatory reason falls upon the defendant."  *Id.* (*citing Williams,* 132 F.3d at 1131).  "If the defendant demonstrates such, the plaintiff then assumes the burden of showing that the reasons given by the defendant were a pretext for retaliation."  *Id.*

Plaintiff presented evidence which was consistent with the threshold issue of whether her complaints deserve constitutional protection as provided under Title VII.  Plaintiff engaged in protected activity when she filed a charge with the EEOC.  Defendant was aware of Plaintiff's exercise of such protected activity.  However, she cannot overcome the third element which requires proof that Defendant took an adverse employment action subsequent to Plaintiff's exercise of such protected activity.  From

13

the record, it is clear that when Plaintiff filed her charge with the EEOC on June 26, 2004, she had

already been denied paid leave to shadow Defendant's personnel on April 7, 2004, the opportunity to

train (sometime in 2003) and the request for disability benefits (she had been notified of the denial before

she filed her charge) (Docket No. 43, p. 49 and Defendant's Exhibit C).  There is no causal relationship

between filing her charge with the EEOC and subsequent adverse employment actions.  Thus, Plaintiff

cannot make a prima facie case for retaliation.

Constructive Discharge

Plaintiff contends that she was subjected to unwelcome discrimination to the extent that the

conditions of her employment changed.  The conditions of employment became intolerable;

consequently, her resignation was involuntary and constructive in nature.  Defendant argues that

Plaintiff's constructive discharge claim fails as it did nothing to create an intolerable working

environment.

"To constitute a constructive discharge, the employer must deliberately create intolerable working

conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and

the employee must actually quit." *Goldmeier v. Allstate Insurance Company*, 337 F. 3d 629, 635 (6th Cir.

2003) *cert. denied*, 124 S. Ct. 1052 (2004) (*citing Moore v. KUKA Welding System & Robot*

*Corporation,* 171 F.3d 1073, 1080 (6th Cir. 1999); *see also Logan v. Denny's, Inc.,* 259 F.3d 558, 568-569

(6th Cir. 2001)).  Working conditions must have been so difficult or unpleasant that a reasonable person

14

in the employee's shoes would have felt compelled to resign.  *Id.* (*citing Kocsis v. Multi-Care Management, Incorporated,* 97 F.3d 876, 887 (6th Cir.1996) (*quoting Held v. Gulf Oil Co.,* 684 F.2d 427, 432 (6th Cir.1982)).

Courts must look at all of the circumstances to determine whether an environment is one that a reasonable person would find hostile or abusive and that the plaintiff in fact did perceive to be so.  *Id.* (*citing Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999)).  Such circumstances include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance."  *Id.* (*citing Harris v. Forklift Systems,* 114 S. Ct. 367, 371 (1993); *accord Abeita v. TransAmerica Mailings, Inc.,* 159 F.3d 246, 251 (6th Cir. 1998); *Hafford,* 183 F.3d at 512).  The circumstances are examined from the point of view of a reasonable member of the protected class.  *Id.* (*citing Yates v. Avco Corporation,* 819 F.2d 630, 636-37 & n. 2 (6th Cir. 1987).  "To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined."  *Id.* (*citing Held,* 684 F.2d at 432).  This seemingly stringent intent requirement can be met "by demonstrating that quitting was a foreseeable consequence of the employer's actions."  *Id.*

The first prong of the objective inquiry addresses whether Plaintiff's working conditions were so difficult or unpleasant that a reasonable person in Plaintiff's position would have resigned.  Even if Plaintiff perceived that such behaviors and/or comments created an intolerable work environment, there is a lack of evidence to suggest a genuine issue of material fact.  The Magistrate assumes as true that

15

during 2003, Dana Abbott attempted to intimidate Plaintiff, that Dana Abbott made an analogy based on race using a white and black purse and then in March or April 2004, he made a similar analysis based on race using lightness and darkness.  At best,  the comment made by Susie Lawson denotes a criticism based on Plaintiff's gender not her race.  These acts and/or comments were made over a two-year period. Plaintiff does not allege that such behavior and/or comments were physically threatening.  There is no evidence that these offensive utterances interfered with Plaintiff's job performance.  Once Plaintiff complained to management, Defendant did not reduce her salary or job responsibilities, reassign her tasks or do anything that would compel Plaintiff to resign.  When viewing these comments and/or behaviors individually and in combination with each other, there is a lack of significant probative evidence that a reasonable person in Plaintiff's protected class would have felt compelled to resign.

Considering the second prong of the objective inquiry, Plaintiff failed to show that a reasonable employer would have foreseen that a reasonable employee would feel constructively discharged.  In fact, Plaintiff wholly failed to present forth evidence sufficient to show that Defendant's failure to act on her complaints was intended to force her resignation.  Plaintiff has failed to support her claim or raise a genuine issue of material fact that her employer's actions were objectively intolerable to a reasonable person or that she was forced to resign.  For these reasons, Plaintiff's constructive discharge claim fails.

## CONCLUSION

For the foregoing reasons, the Magistrate recommends that Defendant's Motion for Summary Judgment be granted, the case dismissed and the reference to the Magistrate terminated.

/s/Vernelis K. Armstrong
United States Magistrate Judge

16

Date: 07/09/07

## <u>NOTICE</u>

Please take notice that as of this date the Magistrate's Report and Recommendation attached hereto has been filed.

Please be advised that, pursuant to rule 72.3(b) of the local rules for this district, the parties have ten (10) days after being served in which to file objections to said report and recommendation.  A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the sixth circuit court of appeals, in *United States v. Walters*, 638 f.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.